UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN PAUL POLZIN,                                  Case No. 11-15030

        Plaintiff,                              Gershwin A. Drain
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael Hluchaniuk
                                                   United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 15)**

**I.    PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On November 13, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 13, 16).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on August 25, 2009, alleging that disability

began when he was a child, on October 17, 1986. (Dkt. 9-2, Pg ID 45). The claim was initially disapproved by the Commissioner on April 22, 2009. (Dkt. 9-2, Pg ID 45). Plaintiff requested a hearing and on March 23, 2011, plaintiff appeared at a hearing with counsel before Administrative Law Judge (ALJ) Mark B. Greenburg, who considered the case *de novo*. At the hearing, plaintiff asked to change his onset date to October 16, 2004, the date he turned 18 years old. *Id*. In a decision dated April 27, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 9-2, Pg ID 45-56). Plaintiff requested a review of this decision on May 5 2011. (Dkt. 9-2, Pg ID 39). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on September 9, 2011, denied plaintiff's request for review. (Dkt. 9-2, Pg ID 30-33); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**AFFIRMED**.

**II.    FACTUAL BACKGROUND**

    A.    <u>ALJ Findings</u>

Plaintiff was 24 years of age at the time of the most recent administrative hearing. (Dkt. 9-2, Pg ID 47). Plaintiff's has no past relevant work history. (Dkt. 9-2, Pg ID 47). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the amended onset date. (Dkt. 9-2, Pg ID 47). At step two, the ALJ found that plaintiff's hydrocephalus with shunt, bipolar disorder, borderline intellectual functioning, and a learning disability were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* At step four, the ALJ found plaintiff could perform a full range of work at all exertional levels with the following non-extertional limitations: the claimant is limited to simple, routine, repetitive tasks consisting of no fast-paced work or work that has production rate quotas and he should work in non-public settings with minimal interaction with coworkers or supervisors. (Dkt. 9-2, Pg ID 50). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 9-2, Pg ID 54-55).

B. <u>Plaintiff's Claims of Error</u>

In summary fashion, plaintiff claims that the hypothetical question posted to the vocational expert was flawed because it did not take into account the full extent of plaintiff's mental impairments. According to plaintiff, throughout the medical exhibits and the testimony of the client, it was evident that he has concentration or attention problems. Dr. Zimostrad reported February 1997 that plaintiff had impaired sustained attention/concentration. (Tr. 297). Dr. Sachin Nagarkar, who was deposed and evaluated plaintiff, found that he is intellectually challenged. Dr. Nagarkar opined that plaintiff was quite immature for his age and he may have problems taking directions, getting along with peers and his relationships. Dr. Nagarkar also reported that plaintiff has mild to moderate limitations in concentration and is markedly limited in social skills. The doctor further stated that he believed plaintiff would not be able to hold a sustained full time job. (Tr. 346-349). Plaintiff also points out that when the ALJ posed a hypothetical including the limitation that plaintiff could not sustain concentration or attention for more than one half hour, the vocational expert testified that the previous jobs she testified about would not be available. (Tr. 53-54). Based on the foregoing, plaintiff asks the Court to reverse the decision denying benefits and remand this case for further proceedings to properly consider and evaluate all medical records of evidence concerning plaintiff's severe impairments and his

ability to perform work-related activities on a regular and sustained basis.

      C.      The Commissioner's Motion for Summary Judgment

The Commissioner contends that the ALJ's hypothetical question limited the complexity of the tasks plaintiff could do ("simple, routine, repetitive tasks"), accommodated plaintiff's limitations in the area of focus and concentration ("no fast-paced work or work that has production rate quotas"), and accounted for plaintiff's social limitations ("nonpublic settings with minimal interaction with coworkers or supervisors"). (Tr. 21). According to the Commissioner, the ALJ reasonably concluded that plaintiff could do simple, routine, repetitive tasks. The ALJ observed that plaintiff graduated from high school and received a one-year retail marketing certificate, attending school full-time. (Tr. 55-56). While plaintiff was not academically talented, the record of a psychological evaluation performed at age 18 indicates that he was getting Bs and Cs. (Tr. 265). As a teenager, plaintiff had worked with a friend of the family as a stocker and cashier; he ended this work not because of inability but rather because the business closed. (Tr. 265). The 2005 consultative examiner (psychologist Dr. Margaret Cappone) noted no diagnosis on Axis II of the multiaxial system (Tr. 267), thus indicating no borderline intellectual functioning or mental retardation. A second consultative examiner (psychologist Dr. Michael Brady) reported in 2010 that plaintiff had an unimpaired ability to perform tasks (Tr. 320).

The Commissioner maintains that the record likewise supports the ALJ's conclusion that plaintiff could concentrate enough to do some work as long as it did not have quotas or fast pace requirements. The ALJ recounted plaintiff's concession that he spent 5 to 10 hours per day on the computer. (Tr. 20, 48). He read stories, some of them long, from an Internet fan fiction website. (Tr. 41-42). He denied any problems reading, and had posted a three-chapter story to a website. (Tr. 41-42). Although plaintiff did not have a driver's license, he was able to concentrate enough to ride a moped to stores. (Tr. 20, 43). He went with his uncle every Friday to a "magic tournament," which from the context appears to refer to the card game Magic: The Gathering. (Tr. 43). Dr. Brady, the 2010 consultative examiner, characterized plaintiff's ability to maintain concentration as good. (Tr. 319). He reported that plaintiff could recall six digits forward and could recall 3 out of 3 objects after a ten-minute delay. (Tr. 319).

As for social limitations, plaintiff testified that he was on medication in 2004 and 2005 for getting into fights with his brother, but that he had been able to control his anger since then. (Tr. 39-40, 45). He lived in the dorms when he was in college (Tr. 55-56) and denied difficulties at school (including disciplinary problems) in a 2005 psychological evaluation by Dr. Cappone. (Tr.255-56). He described his relationship with his mother, stepfather, and siblings as "good" in the same report. (Tr. 266). Dr. Cappone found it easy to establish rapport with

plaintiff and described him as cooperative and pleasant. (Tr. 267). In 2010, plaintiff told Dr. Brady that he had a "couple close friends" and reported being close to his family. (Tr. 318). Dr. Brady found him cooperative and attentive, and detected no significant abnormalities on mental status examination. (Tr. 320). He opined that plaintiff had a good ability to relate and interact with others. (Tr. 320). At the time of the hearing, plaintiff played cards in the "magic tournament" every week, which suggests some ability to get along with others. (Tr. 44-45). Thus, the Commissioner contends that the record supports the ALJ's conclusion that plaintiff's social limitations were not work-preclusive, and in any event the ALJ limited plaintiff to work involving only minimal contact with others.

The Commissioner also points out that plaintiff's argument appears to be based on the "independent psychiatric evaluation" of Dr. S. Nagarkar, procured by plaintiff's counsel after the ALJ hearing but before the ALJ's decision was issued. Dr. Nagarkar stated that plaintiff's mood was labile and that he experienced some psychomotor retardation, even though other mental health professionals did not record these findings. He referred to plaintiff as unable to work because he was "intellectually challenged" (Tr. 348), but did not see any IQ testing results and apparently failed to consider that he had graduated from high school and from a one-year certificate program. He diagnosed a bipolar disorder, (Tr. 345), even though neither consultative examiner thought plaintiff had anything more than an

adjustment disorder and even though he was not being treated by his primary care doctor for a bipolar disorder.  According to the Commissioner, Dr. Nagarkar speculated that plaintiff might have problems "getting along with peers" and might have "quite chaotic" relationships (Tr. 348), but the record reveals that plaintiff got along well with his family and with examiners.  Finally, the Commissioner points out that Dr. Nagarkar conceded that he "didn't see anything that jumped out at" him on plaintiff's mental status examination (Tr. 347), suggesting that he relied in substantial part on plaintiff's self-report.  The Commissioner maintains that Dr. Nagarkar's opinions are entitled to no special deference because he did not treat Plaintiff. The ALJ could reasonably choose to give more weight to the opinions of Drs. Cappone and Brady, which were more consistent with the record as a whole (including with each other).  Furthermore, the ALJ could consider that Dr. Nagarkar was hired by plaintiff's counsel after plaintiff's hearing for the purpose of supporting plaintiff's disability claim. Thus, the ALJ's decision not to follow Dr. Nagarkar's decision was well within his discretion as factfinder.

### III.  DISCUSSION

####   A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

While the undersigned has thoroughly reviewed the record evidence, the parties' submissions, and the ALJ's decision, plaintiff cannot simply make the claim that the ALJ erred by not adopting the opinions of Dr. Nagarkar, a non-treating physician who examined plaintiff on one occasion, while leaving it to the Court to scour the record to support this claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way,

leaving the court to ... put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D. Mich. 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citation omitted). In the view of the undersigned, plaintiff's argument is wholly insufficient and undeveloped. Plaintiff offers no basis whatsoever for the Court to conclude that the ALJ's decision is not supported by substantial evidence and offers no factual or legal basis for the Court to conclude that the ALJ should have adopted Dr. Nagarkar's opinions over the other opinions and evidence in the record. Moreover, as described in detail above, the Commissioner convincingly establishes that the ALJ's RFC is well-supported by substantial evidence and that plaintiff's credible limitations were accommodated in both the RFC and the hypothetical question posed to the vocational expert. Therefore, the undersigned finds no basis to the disturb the ALJ's decision.

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 15, 2013        s/Michael Hluchaniuk
                                                      Michael Hluchaniuk
                                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on February 15, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Richard J. Doud, Susan K. DeClercq, AUSA, and the Commissioner of Social Security</u>.

                                                s/Tammy Hallwood
                                                Case Manager
                                                (810) 341-7850
                                                tammy_hallwood@mied.uscourts.gov